UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUL 2 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-514-GWU

BIGE R. BAKER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary,

3

778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bige R. Baker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of status post femur fractures, a skull fracture, a nasal fracture, a stable T-11 compression fracture, and an intact right ankle fracture, and residuals of reduced strength in the left knee and restricted flexibility in the right ankle. (Tr. 14). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Baker retained the residual functional capacity to perform his past relevant work as a truck driver and, therefore, was not entitled to benefits. (Tr. 18-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 30 years, 11th grade education, and work experience as a tree cutter, tree climber, truck driver, and roofer, could perform any jobs if he were limited to "medium" level exertion and had "reduced strength in his left knee and that his right ankle is restricted in flexibility." (Tr. 293-4). The VE responded that, with these restrictions, the individual could still perform the plaintiff's past job as a

4

truck driver. (Tr. 294). Reducing his exertional level to "light" would not affect his ability to perform the truck driving work. (Id.).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Unfortunately, although his medical history shows that Mr. Baker had several serious injuries, proof of permanent restrictions greater than found by the ALJ is lacking.

Mr. Baker alleged disability commencing February 11, 2002 due to a logging accident on that date in which a tree had fallen on him and "shattered" his thighs. (Tr. 62). Ligaments and tendons in his ankle had been torn, and rods had to be inserted in both of his legs. (Tr. 62, 284). At the administrative hearing, Mr. Baker had also testified there had been an earlier logging accident in late 1999 in which a tree had hit him in the head and back, and this accident had resulted in skull fractures and the eventual placement of drains to relieve pressure inside his skull. (Tr. 282-3). Currently, he complained of a severe headache three or four times a week, difficulty with weight-bearing on his left knee, loss of flexibility in his ankle, and some residual problems from compression fractures of his vertebrae, which produced pain and discomfort if he did "a lot of lifting or bending over." (Tr. 285-6). Problems with his left leg made it difficult for him to ascend stairs. (Tr. 289). While he did not think he could stand for very long, he had no problems with sitting. (Tr.

294). He admitted at the April, 2004 hearing that he had not been to a doctor in a "couple" of years because he did not have insurance. (Tr. 291).

Medical records in the transcript show that the plaintiff was hospitalized at the University of Kentucky Medical Center (UKMC) between December 28, 1999 and January 3, 2000 with bilateral femur fractures, a skull fracture, and a nasal fracture, which had reportedly occurred after he had fallen 10 or 15 feet out of a tree while cutting branches. (Tr. 110). In addition, he had various contusions and abrasions. (Id.). Dr. John Gorczyca performed an open fixation of both femurs, and discharged the plaintiff with a walker and a wheelchair, allowing only partial weight-bearing on the right leg and no weight-bearing of the left leg. (Tr. 111). On February 4, 2000, Mr. Baker presented at the emergency room of Lake Cumberland Hospital with a severe headache, nausea, and vomiting, and a CT scan of the head showed large amounts of the air throughout in various different size pockets. (Tr. 157-8). He received a frontal craniotomy and a patch for leaking cerebral spinal fluid, and was discharged on February 13, 2000. (Tr. 154, 156). When Dr. Gorczyca saw Mr. Baker in follow-up on February 28th, he noted that the plaintiff was recovering "quite well" from his head surgery, and his bilateral femur fractures were much improved. (Tr. 194). Physical examination showed a full extension to 130 degrees of the knees bilaterally, and no pain with full weight-bearing on either side. (Id.). X rays showed significant callus formation in both fractures. (Id.). The physician planned physical therapy for hip and knee strengthening, range of motion, and gait training,

6

and advised weight-bearing as tolerated with no restrictions. (Id.). He added: "We have told them he can do anything he feels comfortable with as both fractures appear healed." (Id.).

Apparently the plaintiff returned to work for almost two years, but in February, 2000 he was again hit by a tree in the head and upper back, and knocked unconscious. (Tr. 204). A CT scan of the brain did not show any evidence of abnormalities, and a thoracic CT scan showed evidence of a compression fracture of T11, which was stable, and which the physician, Dr. El-Kalliny, felt was the cause of the patient's symptoms. (Tr. 205). Another physician, Dr. Belhasen, was consulted about a fractured left ankle, which he placed in an "equalizer boot" and advised only "feather weight-bearing with crutches." (Tr. 206). Mr. Baker returned to Dr. El-Kalliny on February 26, 2002, stating that he had a significant amount of pain in the lower thoracic and paraspinal musculature area, but his right foot fracture was healing well, and he denied headaches or other complaints. (Tr. 217). Dr. El-Kalliny's examination showed that Mr. Baker was neurologically intact, and a new CT scan of the spine showed the T11 fracture to be stable. (Id.). The physician scheduled six weeks of physical therapy. The plaintiff only made a few visits to physical therapy, however, before discontinuing it. (Tr. 199-200).

Mr. Baker underwent a consultative physical examination by Dr. Jeff Reichard on September 21, 2002. (Tr. 218). He told Dr. Reichard that he was able to perform some light housework such as vacuuming and washing dishes, and

7

could mow his lawn. (Id.). Dr. Reichard's examination showed that Mr. Baker was healthy appearing, albeit obese at a weight of 234 pounds and height of five feet 10 inches. (Tr. 219). He had a normal gait, was comfortable sitting and standing, had a normal range of motion of the cervical spine, could bend forward 90 degrees at the waist, could squat, walk heel-to-toe, and walk on his heels and toes. There was no spasm or tenderness, and straight leg raising tests were normal. (Id.). Sensation and reflexes were also normal and the only physical abnormality, apart from well-healed scars over the knees, was a reduced dorsiflexion of the right ankle. (Tr. 220). Dr. Reichard did not list any specific functional restrictions. State agency reviewing physicians, however, opined that Mr. Baker's conditions would resolve to "less than severe." (Tr. 258, 262).

Mr. Baker was given a mental health evaluation by Dr. Gary Maryman in November, 2002. While he complained of forgetfulness and difficulty concentrating, Dr. Maryman's testing showed good short and long-term memory, a full-scale IQ score of 102, and a post high school level reading ability. (Tr. 223-6). Although Dr. Maryman made a "provisional" diagnosis of a depressive disorder, he did not find any specific limitations in the plaintiff's ability to make occupational, performance, or personal/social adjustments. (Tr. 227). State agency reviewers concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 228, 243).

In view of the fact that no treating physician placed any permanent, specific restrictions on the plaintiff, and in view of the minimal abnormalities found by Dr.

8

Baker

Reichard's examination, the ALJ's residual functional capacity was supported by substantial evidence.

The plaintiff argues on appeal that the ALJ did not give a sufficient rationale for failing to find the plaintiff's allegations disabling pain to be credible, but an examination of the ALJ's decision shows that it met the standards set out in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 852-3 (6th Cir.1986). The plaintiff also alleges that the hypothetical question did properly reflect the combined effects of all the plaintiff's limitations, citing Howard v. Commissioner of Social Security, 276 F.3d 235, 238-9 (6th Cir. 2002). As the Commissioner of points out in response, the Sixth Circuit has clarified Howard in the case of Webb v. Commissioner of Social Security, 368 F.2d 629 (6th Cir 2004) by saying that hypothetical questions to vocational experts are not required to include lists of claimants' medical conditions. Id. at 633. The hypothetical question and the present case gave the plaintiff the benefit of the doubt, in view of the lack of specific permanent restrictions from any examining or treating source.

The decision will be affirmed.

This the  28  day of July, 2004.

*signature*

G. WIX UNTHANK
SENIOR JUDGE

9